JACOB COLLER, executor, &c. *vs.* JOHN WENNER and GEORGE WENNER.

On the 24th of December, 1855, the defendants made their promissory note for $300 payable to Jacob Coller, senior, one year after date, for money lent and advanced. On the 1st of April, 1859, the payee sold and transferred the note to John Coller. The latter died, in June, 1863, leaving a will, by which he appointed Jacob Coller, 2d, his executor, who, as such executor, after the death of the payee, brought an action against the makers, upon the note. The defendants set up the defense of usury. *Held* that one of the defendants was properly admitted as a witness in behalf of himself and his co-defendant, to establish the defense, by proving conversations and transactions between himself and the payee of the note at the time it was given.

THIS·action was brought to recover the amount due upon a promissory note, made by the defendants on the 24th day of December, 1855, for the sum of $300 and interest, payable to Jacob Coller, one year after the date. Said note was given for money lent and advanced by the payee to the defendants, at the time of the execution and delivery of the note. On the 1st day of April, 1859, the payee, Jacob Coller, sold and transferred this note to his son, John Coller. Soon after taking the note, and on the 11th day of December, 1861, there was paid thereon by the defendants, the sum of $15, which was indorsed on the note. John Coller, the assignee of the payee of the note, died on the 17th day of June, 1863, leaving a will, and his son Jacob Coller (the payee's grandson) was, by an order of the surrogate's court, appointed executor of said will. Soon afterwards the payee of the note, Jacob Coller, died, and this action was brought to recover the amount of the note. On the trial of the case at the Livingston circuit court, held in April, 1865, after the plaintiff had rested his case, the defendants sought to establish their defense, which was usury, by the testimony of John Wenner, one of the defendants. This testimony was objected to by the plaintiff and the objection overruled and testimony received. The court directed the jury to find a verdict for the defendants, and they found accordingly. The plaintiff excepted, and appealed from the judgment.

*McNeil Seymour,* for the appellant. I. The testimony of the defendant in regard to what took place, at the time of the loan of the money and the making of the note, between the payee, Jacob Coller, and the defendants, related solely to a transaction and conversation had personally by the parties defendant, with the deceased assignor of the note. As between the payee's executors and the parties defendant, the testimony is inadmissible ; it would be clearly inadmissible in an action brought by the testator, John Coller, the assignee of the note. Was it admissible against the assignee's executor ? Or, in other words, does the death of the assignee open the mouths of the defendants, to detail this transaction against his representative appointed under the laws of the state, by a court of competent jurisdiction, *trustee* of his estate ? We think this was not the intent of the framers of the law. John Coller, the assignee, had he sued this note, would have recovered for the benefit of his estate. The executor would recover, not for his own benefit, for he has no personal interest, but for the benefit solely of the estate, and to carry out and execute the wishes of his testator. The plaintiff has no title to the cause of action ; he represents in court John Coller, deceased, and does only what John Coller would have done if living, and in either case the recovery enures only to the benefit of John Coller's estate. This accords with all the elementary writers. In *Bouvier's Law Dictionary, (vol.* 1, *p.* 496,) it is said : "The executor represents the testator, and therefore may sue and recover all the claims the testator had at the time of his death, and may be sued for all debts due by him ; still his interest in the goods of the deceased is not that absolute, proper and ordinary interest, which every one has in his own proper goods. He is a mere trustee to apply the goods for such purposes as are sanctioned by law." The author quotes 4 *Term R.* 645 ; 9 *Coke,* 88 ; 2 *Inst.* 236 ; *Off. Ex.* 192.

Suppose section 399 had incorporated a provision as against a lunatic, with the same provision as to deriving "title im-

mediately ;" assume that afterwards a law like the law of 1845, (*see* 3 *R. S. p.* 135, § 11, *5th ed.*) had been passed conferring upon the committee the right to sue in his own name, and an action is brought by the committee to recover the amount of a note which the lunatic held as assignee, would it be held that under the statute the maker of the note could testify because the suit was brought in the name of the committee ?

Suppose, again, that John Coller, deceased, was the payee of this note, and that Jacob Coller, as executor, had entered upon the discharge of his duties ; in fact, had commenced this action, and an administrator *de bonis non* had been appointed ; the quasi or representative title goes to him ; in this case could it be claimed that the mouth of the defendant would be opened ? The law assumes that where one party is sworn, there is a necessity for the testimony of the other, for the reason of the *bias,* against which it was intended to give protection. Is not the necessity the same in either case ? Under the theory of this statute, is it possible that a *party* is to be benefited by the death of the other party ? And by the providence of God is a party not only to suffer the loss of life, but also of his estate, by being deprived, by his death, of the protection of this statute ?

II. The word "title," in this section can only relate to cases where there has been a voluntary transfer of property ; voluntarily transferred by one ; voluntarily received by the other, with full knowledge of the legal consequences : but in this case, without his knowledge, Jacob Coller is appointed executor ; he accepts the trust, and enters upon his duties to collect the personal estate of the deceased ; as an *incident* to the trust, he has a right to institute this action *as executor.* Had he sued in his own name, he would have been nonsuited. Is not this fact alone an ample illustration of the intention of the statute in the use of the words *" title to the cause of action."* This "title" can not mean the legal right of a representative to collect the moneys of another, not his own —

*to execute the will and purpose* of another—not his own, even if the *mere words* of the statute should *appear* against us. Authorities need not be quoted to sustain the familiar axiom, "*A thing within the intention, is as much within the statute as if it were within the letter ; and a thing within the letter only, if contrary to the intention, is not within the statute.*"

III. The case of *Prouty* v. *Eaton and wife*, (41 *Barb.* 409,) it is submitted, has no application to the case before the court. In that case a mortgagee assigned the mortgage to a third person, such third person assigned to the executors of the mortgagee and assignor for a valuable consideration, passing to them an absolute title to the mortgage and the moneys due thereon; the executors, therefore, acquired a perfect title from such assignee. He voluntarily assigning, they voluntarily receiving ; their minds meeting, upon the contract and the consideration ; such title having no derivative relation to such deceased assignor or his estate ; such executors reassign such mortgage to their assignor, the plaintiff in the action. In the language of Judge Johnson, page 415, "Thus the title to the cause of action, which the plaintiff derived immediately from the deceased, he transferred wholly to the executors. He was then wholly divested of all title, the executors thus acquired title immediately from him, mediately or remotely only from the deceased, and so it was with the plaintiff when it was reassigned to him by the executors before the trial." The plaintiff thus had deprived himself of the protection of the statute, and did it voluntarily. How different is the case of the plaintiff in this action ; *his right to sue*, call it by what name you please, is one which, without his volition, may be by any court of competent jurisdiction, transferred to another, and so on to a third, or fourth representive ; therefore, as before suggested, if this representative right is a title within the meaning of section 399 ; if the executor of a deceased person should be removed and *such title* by act of law transferred to another,

Coller *v.* Wenner.

testimony of parties *incompetent* under the first executor, would be competent under the second, because he does not acquire title to the cause of action immediately from such deceased person.

IV. In adopting this statute giving the parties the right to be sworn, it certainly was not the intention of the legislature to prevent the transfer of negotiable paper or other securities, for this would be against public policy. On the other hand, the statute has carefully guarded the rights of a dead party, for he is still "eo nomine," and by necessity a party to the action, appearing by his representative John Coller, against a living party, and this rule intended to be made inflexible, unless waived by voluntary action. Now if, under the circumstances of this case, the mouth of the living party is opened, as against the representative of the dead, who would then become the assignee of a note, thus liable to be assailed at the moment of his death, subjecting thereby his rights to a providence absolutely beyond his control? For instance, one who desires to raise money, proposes to sell a negotiable note to a person having money. He inquires concerning the facts, but is answered, parties may be witnesses. While the assignor is living he is safe. He is told that if the assignor is dead, the other party can not be a witness, but to his amazement finds that if both the assignor and assignee should die, the opposite party could be a witness against his executor; liable to die at any moment, would he, a prudent man, purchase the note? It is a presumption that every one knows the law. Would not therefore such a construction greatly prevent the business and traffic in negotiable and commercial paper? "A statute should not be construed to work a public mischief, unless required by words of the most explicit and unequivocal import." (*The People* v. *Lambier*, 5 *Denio*, 9.)

V. The object of this statute, after giving the right to parties to testify, was to carefully exclude the testimony of a living party in regard to personal transactions between him

and a dead party, which exclusion could also be enforced by his assignee. In regard to assignors, the exclusion is unlimited ; in regard to assignees, if they voluntarily part with the claim to third persons, and such persons voluntarily purchase, they do it with the knowledge that they can not enforce such exclusion. Therefore, when there has been no such voluntary action, the court should construe the statute in favor of the prohibition which the legislature intended to make against a living party swearing against a deceased party ; particularly as in this case, in which it is conceded if the testator for the benefit of whose estate the claim is sought to be enforced were living, these defendants could not be sworn.

Further as to the construction of statutes, see 5 *Abbott's Digest, p.* 79, §§ 27, 28, 29, 32 *and* 33, which refer to several cases in the Court of Appeals, showing clearly that statutes must be expounded according to the meaning, and that the spirit of a law may be referred to, to interpret its words.

VI. The limitation of the word *"immediately,"* does not apply to this action, for the reason that such defendants have been sued by an executor. The words of the statute applicable to this subject, are as follows : after authorizing examination of parties, "Nor shall a party to an action be examined in his own behalf in respect to any transaction or communication had personally by said party with a deceased person, against parties (plaintiff) who are the executors or assignees of such deceased person, where they have acquired title to the cause of action immediately from such deceased person, *or* have been sued as such (parties defendant) *by the* executor or assignee." The above statute will be found impossible of construction, unless after the words *"against parties,"* the word *plaintiff* is understood, and after the words "as such" where they last occur, the words *parties defendants* are understood, as indicated above in parenthesis. If this be the true construction, in all cases where an assignee or executor *is plaintiff*, the personal transactions of an assignor, however remote, can not be detailed by the defendants.

*A. M. Bingham,* for the respondent. I. The evidence of an agreement between John Wenner and Jacob Coller, sen. such as is set up in the answer relating to usury, was competent to be proven, by the defendant, John Wenner, under section 399 of the Code, because, 1st. The evidence was not offered against a party who was the executor, administrator at law, next of kin, or assignee, of Jacob Coller, sen. the deceased person with whom the conversation offered was had. (*Buckingham* v. *Andrews,* 34 *Barb.* 434. *Penny* v. *Black,* 6 *Bosw.* 50.) 2d. The plaintiff did not acquire the title immediately from Jacob Coller, sen. (*Prouty* v. *Eaton,* 41 *Barb.* 409.) 3d. The conversation or agreement was not a transaction had personally with John Coller, the deceased party for whom the plaintiff was executor, and the statute does not prohibit a party from testifying to a conversation with a third party. (*Simmons* v. *Sisson,* 26 *N. Y. Rep.* 264, 277.)

II. The evidence of John Wenner relating to the sale of a horse and the application of the proceeds upon the note in question to Jacob Coller, sen. in the presence of John Coller, was competent for the reasons : 1st. It was not a transaction had personally with John Coller. (*Simmons* v. *Sisson,* 26 *N. Y. Rep.* 264.) 2d. The plaintiff had been examined and had testified to conversations had with both of the defendants about the sale and application of the proceeds, and had testified that the indorsement was in the hand writing of John Coller. He had thus been examined in relation to the transaction of the sale of said horse, and the defendant was therefore permitted to testify, under section 399, to the same transaction. (*Code,* § 399.) A party must be permitted to testify, unless the evidence offered comes clearly within the exceptions. (§ 399. *Traphagen* v. *Traphagen,* 40 *Barb.* 537. *Franklin* v. *Pinkney and others, reported in N. Y. Times, Nov. 16th,* 1864.) 3d. The evidence of John Wenner was competent in relation to the sale of the horse and the application upon the note of the proceeds in behalf of his co-defendant, George Wenner, under section 297 of the Code, to

show that the payment upon said note was made by him individually, and not by George Wenner; because George Wenner had set up separately the statute of limitations; a separate judgment might be rendered in his favor, and the plaintiff must rely upon the indorsement as a new promise, to support their action against George Wenner. (*Shoemaker* v. *Benedict*, 11 *N. Y. Rep.* 176, 184. *Van Keuren* v. *Parmelee*, 2 *id.* 525. *Esselstyn* v. *Weeks*, 12 *id.* 635, 637.) John Wenner was therefore a competent witness to prove the facts relating to the sale of this horse, and the indorsement thereof upon the note, although it was a transaction had personally with John Coller, deceased, because the evidence had no relevancy to the case, except upon the separate defense of the statute of limitations. (*Blodget* v. *Morris*, 14 *N. Y. Rep.* 482. *Beal* v. *Finch*, 11 *id.* 131–133.)

*By the Court,* E. DARWIN SMITH, J. The only question presented or discussed by counsel in this case, is, whether the defendant, John Wenner, was properly admitted as a witness in his own behalf. He was admitted to prove a defense arising out of a transaction between himself and a deceased person, Jacob Coller, who was the payee of the promissory note in suit, lent the money for which it was given, and received the usurious premium set up as a defense. When parties were allowed to be witnesses for themselves, it was seen by the legislature that the rule would operate very unjustly if the survivor of two parties to a contract or other transaction was allowed, after the decease of the other party to such contract or transaction, to testify in regard to conversations and dealings with such deceased person. It was, therefore, expressly declared in section 399, as amended in 1857, when the right was first given for parties to be witnesses in their own behalf, that such examination should not be had unless the party or person in interest was living, and without ten days notice of the intended examination. Such would be the rule of obvious justice and common fairness. Section 399,

Coller *v.* Wenner.

with all its changes, and from its first enactment in 1857, so as to allow parties to be witnesses in their own behalf, I have supposed was framed and intended to produce this equality of rights between parties. But it seems to me that the legislature has entirely failed to carry out and secure this purpose or intent, by appropriate language, as the section now stands, if such was their intent in fact. Section 399 provides, in the first instance, that parties to an action may be examined as witnesses in their own behalf in the same manner as other witnesses. Then it provides that an assignee of a thing in action shall not be examined in behalf of a party, nor shall a party to an action be examined in has own behalf, in respect to any transaction or conversation had personally by said assignor or said party, respectively, with a deceased person. So far the language is clear and explicit, forbidding the examination of an assignor, or of a party to any transaction or conversation with a deceased person. If the section had stopped here, it would have covered this case ; for Wenner, the defendant, was called to testify, and did testify, to a transaction and conversation with a deceased person with whom the original contract was made. But the section then proceeds in these words : "Against parties who are the executors, administrators, heirs at law, next of kin, or assignees of such deceased person, when they have acquired title to the cause of action immediately from said deceased person." This part of the section is a clear limitation of the former part, and takes away the general limitation of the restriction of the right to testify in respect to any transaction or conversation with a deceased person, and qualifies such limitation by another term. It makes the restriction of the right to testify on the part of the living party to any transaction, when the other party to such transaction is dead, to depend upon the fact that the action is prosecuted by "an executor, administrator, heir at law, or next of kin or assignee of such deceased person, and when they have acquired title to the cause of action immediately from said deceased person."

Coller *v.* Wenner.

These terms, clearly, do not apply to the plaintiff in this action. He is not an executor of the deceased person who was a party to the transaction, Jacob Coller, and does not hold and had not acquired title to the cause of action "immediately from the said deceased person." The plaintiff derived his title to the note from John Coller, deceased, and not from Jacob Coller. The note was transferred in his life time by Jacob Coller to his son John, of whom the plaintiff is executor. The express language of the section takes away the restriction of the right to testify embraced in the previous terms, and leaves the defendant his general right, as a party to an action, to testify in his own behalf, in the same manner as any other witness. This view of the section affirms the decision at the circuit. This view of this section has before been taken at general term in this district, in the case of *Fairchilds* v. *Avery*, decided at the June general term, 1861. In that case promissory notes were given in California by Avery to one Williams, who transferred them to one Haight, who assigned them to the plaintiff Fairchilds. I held at the circuit that Avery — Williams being dead — was a competent witness in his own behalf, and the decision was affirmed at general term, but I do not find that the case was reported.

The motion for a new trial must be denied.

[Monroe General Term, December 4, 1865. *Johnson, J. C. Smith* and *E. D. Smith*, Justices.]